UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WORLD GTL INC. and : 
WORLD GTL ST. LUCIA LTD., 
 : 
        Plaintiffs, :  10 Civ. 1542 (LMM)
 :  ECF CASE
  - against - 
 :  ORAL ARGUMENT
  REQUESTED
PETROLEUM COMPANY OF TRINIDAD AND : 
TOBAGO LTD., 
 : 
        Defendant. : 
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION**

                 **ALLEN & OVERY LLP**
                 1221 Avenue of the Americas
                 New York, New York 10020
                 Telephone: (212) 610-6300
                 Facsimile: (212) 610-6399

                 *Attorneys for Defendant*
                 Petroleum Company of Trinidad and Tobago Limited

July 23, 2010

# TABLE OF AUTHORITIES

## CASES

*Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*,
   727 F.2d 274 (2d Cir. 1984) ................................................................................10

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
   58 F.3d 16 (2d Cir. 1995) ................................................................................4, 7

*Contec Corp. v. Remote Solution Co.*,
   398 F.3d 205 (2d Cir. 2005) ..............................................................................7

*Duraku v. Tishman Speyer Props., Inc.*,
   No. 09 *Civ. 9351*, 2010 U.S. Dist. LEXIS 53261 (S.D.N.Y. May 27, 2010) ................9

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*,
   815 F.2d 840 (2d Cir. 1987) ..............................................................................4

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000) ..........................................................................................9

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
   725 F. Supp. 712 (S.D.N.Y. 1989) ...................................................................3

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*,
   252 F.3d 218 (2d Cir. 2001) ...........................................................................5, 6

*Rent-a-Center, West, Inc. v. Jackson*,
   No. 09-497, 2010 U.S. LEXIS 4981 (U.S. June 21, 2010) ..............................9

*WorldCrisa Corp. v. Armstrong*,
   129 F.3d 71 (2d Cir. 1997) ...............................................................................5, 6

## RULES AND STATUTES

9 U.S.C. § 3 ................................................................................................................10

9 U.S.C. § 206 ..........................................................................................................9, 10

Fed. R. Civ. P. 12(b) ..................................................................................................10

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................ 1

**ARGUMENT** .............................................................................................................................. 2
I. The Court Should Refer This Dispute, Including The Issue Of Arbitrability, To The Arbitral Tribunal As Required By The Agreements .................................................... 2
A. The Claims Asserted In This Case Are Plainly Arbitrable ...................................... 2
  1. The Agreements Define The Parties' Relationship With Respect To The Project ...... 2
  2. Plaintiffs May Not Enforce The Credit Agreement ................................................ 3
  3. Plaintiffs' Claims Fall Within The Scope Of The Arbitration Clauses ...................... 4
    (a) It Is Undisputed That The Agreements Contain Broad Arbitration Clauses ............................................................................................. 4
    (b) The Claims Are Covered By The Agreements' Arbitration Clauses .............. 5
    (c) Tort Claims Are Arbitrable ..................................................................... 6
B. It Is Undisputed That The Agreements Provide That The Arbitral Tribunal, Not The Court, Should Determine Arbitrability ............................................................. 7
C. The Details Of The Pending ICC Arbitration Are Irrelevant To This Dispute ......... 8
  1. Plaintiffs' Alleged Inability To Assert Counterclaims Or Affirmative Defenses In The ICC Arbitration Does Not Affect Its Ability To Arbitrate This Dispute .......... 8
  2. Plaintiffs May Not Avoid Their Obligation To Arbitrate Under The Agreements By Alleging That Arbitration Is "Prohibitively Expensive" ................................. 8
II. The Court Should Stay This Action Pending Arbitration ........................................... 9

**CONCLUSION** ........................................................................................................................ 10

Defendant Petrotrin submits this reply memorandum of law in further support of its motion to compel arbitration of all claims asserted by Plaintiffs WGTL Inc. and WGTL St. Lucia pursuant to Section 206 of the FAA and Article II of the New York Convention, and to stay this action.[1]

**<u>PRELIMINARY STATEMENT</u>**

Plaintiffs agreed that "[a]ny dispute, controversy or claims arising out of or related to" the Project Agreement and the Shareholders Agreement and "the breach, termination or invalidity" thereof is to be resolved by arbitration under the LCIA Rules. Kimmelman Declaration Exhibit A (Project Agreement) § 26; Exhibit C (Shareholders Agreement) § 9(a). Furthermore, by adopting the LCIA Rules, Plaintiffs agreed that "[t]he Arbitral Tribunal shall have the power to rule on its own jurisdiction, including any objection to the initial or continuing existence, validity or effectiveness of the Arbitration Agreement." Kimmelman Declaration Exhibit B (LCIA Rules) Article 23.1.

Plaintiffs do not dispute the existence or binding nature of the arbitration clauses contained in the Agreements. Nor do Plaintiffs dispute that these clauses are paradigms of broad arbitration clauses, giving rise to a presumption of arbitrability, or that they expressly incorporate the LCIA Rules that grant arbitrators the power to decide issues of arbitrability. Rather, Plaintiffs argue that their claims do not arise out of the very agreements that define the relationship between Petrotrin and WGTL as participants in the Project and invoke an agreement to which Plaintiffs are not parties and under which they have no claims.

Plaintiffs cannot escape their contractual obligation to resolve all disputes "arising out of or related to" the Agreements. The parties' contracts, the FAA, and the New York Convention all require that the claims asserted in this case be referred to arbitration.

---

[1] This reply memorandum incorporates the definitions used in the Memorandum of Law in Support of Defendant's Motion to Compel Arbitration and Stay This Action ("Moving Memorandum"), dated June 8, 2010. "Opposing Memorandum" refers to Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration and Stay This Action, dated July 6, 2010. "Kimmelman Supp. Declaration" refers to the Supplemental Declaration of Louis B. Kimmelman, dated July 23, 2010.

# ARGUMENT

I.  **THE COURT SHOULD REFER THIS DISPUTE, INCLUDING THE ISSUE OF ARBITRABILITY, TO THE ARBITRAL TRIBUNAL AS REQUIRED BY THE AGREEMENTS**

   A.  <u>**The Claims Asserted In This Case Are Plainly Arbitrable**</u>

Plaintiffs allege that they "brought [the claims alleged in the Complaint] primarily under the Credit Agreement[.]" Opposing Memorandum at 8. This assertion is incorrect. Plaintiffs are not parties to the Credit Agreement and have no rights under that agreement. However, both Plaintiffs are parties to the Project Agreement and WGTL St. Lucia is party to the Shareholders Agreement. All of their claims arise out of or relate to these Agreements and fall within the scope of the broad arbitration clauses in these Agreements.

   1.  <u>The Agreements Define The Parties' Relationship With Respect To The Project</u>

The primary contract defining the relationship between Petrotrin and WGTL as participants in the Project is the Project Agreement, an umbrella agreement that the parties entered into "to express the terms and conditions of their agreement to build and operate the GTL Plant," and "to set forth in as much detail as is practicable at the time of its execution the basic terms and conditions under which the GTL Project will be built, financed and operated during its Term." Kimmelman Declaration Exhibit A (Project Agreement) recitals, § 1. The Project Agreement describes the relationship between Petrotrin and WGTL with respect to their joint development of the Project, including site selection (*Id.* § 2), the development of the Project schedule (*Id.* § 3), gas supply (*Id.* § 11), the entry into additional Project contracts (*Id.* § 31), and the cost and financing of the Project (*Id.* §§ 6-8).

The Project Agreement is supplemented by a number of other agreements including the Shareholders Agreement, which describes Petrotrin and WGTL St. Lucia's relationship with respect to the Project Company and defines and governs their respective ownership interests in the Project Company, as well as their respective payment for such interests. Kimmelman Declaration Exhibit C

(Shareholders Agreement) § 3(c)-(d). The Shareholders Agreement also provides for the organization and management of the Project Company. *Id.* § 5.

### 2. Plaintiffs May Not Enforce The Credit Agreement

Plaintiffs state that "on or about January 12, 2007, WGTL and Petrotrin entered into certain agreements constituting the Credit Agreement and related security and financing agreements[.]" Opposing Memorandum at 3-4. That is not correct.[2] The Credit Agreement, which sets out the terms of the Project lender's loan to the Project Company, was entered into by CS (the lender) and the Project Company. Moving Memorandum at 5. Neither Plaintiff is a party to the Credit Agreement. As a result, Petrotrin and Plaintiffs never agreed to "submit[] to the nonexclusive jurisdiction of the [New York courts] for the purposes of all legal proceedings *arising out of or relating to*" the Credit Agreement. Opposing Memorandum at 10-11. Only the lender and the Project Company are bound by that provision.

Moreover, Plaintiffs have no third party beneficiary rights under the Credit Agreement. *See In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F. Supp. 712, 733 (S.D.N.Y. 1989) ("Third parties to a contract may seek to enforce that contract only if (a) a recognition of the third party's right to performance carries out the intention of the direct parties to the contract, and (b) the promisee intends to give the third party the benefit of the promised performance…Absent such intent, the third party is merely an incidental beneficiary with no right to enforce the contract.") (citations and internal quotation marks omitted). The Credit Agreement specifically disclaims any intent to include WGTL as a third party beneficiary, providing that "[t]he agreement of each Lender hereunder…is solely for the benefit of the Borrower, and no other Person (including any other Project Participant[])…shall have any rights hereunder against any Secured Party with respect to the Loans, the proceeds thereof or otherwise[.]"

---

[2] Plaintiffs also falsely describe the Credit Agreement as being "between, among others, the two parties." Opposing Memorandum at 2.

Kimmelman Declaration Exhibit D (Credit Agreement) § 9.6.[3] WGTL is neither a party to nor a third party beneficiary of the Credit Agreement, and may not enforce any of its terms, including its dispute resolution clause. A blanket assertion that "Plaintiffs brought their claims primarily under the Credit Agreement, which contains no such obligation to arbitrate" is simply inaccurate and irrelevant. Opposing Memorandum at 8.[4]

Plaintiffs' assertion that Petrotrin "attempts to argue that because both Agreements contained broad arbitration clauses, that [sic] these clauses must be incorporated into the Credit Agreement" is also incorrect. *Id.* at 11. Petrotrin has moved to compel arbitration under the Project Agreement, to which Plaintiffs are parties, and the Shareholders Agreement, to which WGTL St. Lucia is party, not under the Credit Agreement, to which Plaintiffs are not parties. *See* Moving Memorandum at 2.

Plaintiffs' conclusion that "there is *clear and unmistakable evidence* that no arbitration clause was to be incorporated into the Credit Agreement" is irrelevant because Plaintiffs' claims simply do not relate to the Credit Agreement. Opposing Memorandum at 11-12. Plaintiffs' claims arise from or relate to the Agreements, and those claims are subject to the arbitration clauses in the Agreements.

    3.    <u>Plaintiffs' Claims Fall Within The Scope Of The Arbitration Clauses</u>

        (a)    <u>It Is Undisputed That The Agreements Contain Broad Arbitration Clauses</u>

A clause "submitting to arbitration any claim or controversy arising out of or relating to the agreement" is "the paradigm of a broad clause." *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (citation and internal quotation marks omitted). A broad arbitration clause

---

[3] The term "Project Participant" includes each Shareholder and each Sponsor, while the terms "Shareholder" and "Sponsor" include WGTL St. Lucia and WGTL Inc., respectively. *See* Kimmelman Declaration Exhibit D (Credit Agreement) Appendix A.

[4] Moreover, the Court need not defer to Plaintiffs' characterization of their claims, as a court determining whether a particular claim falls within the scope of an arbitration agreement "focus[es] on the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987) (citation omitted). However, "[i]f the allegations underlying the claims 'touch matters' covered by the parties'… agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Id.*

"creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (citation and internal quotation marks omitted). A broad arbitration clause also creates a presumption that the parties "intend all issues that touch matters within the main agreement to be arbitrated." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 225 (2d Cir. 2001) (citation and internal quotation marks omitted). The Agreements call for the arbitration of any dispute arising out of or related to each Agreement, thus giving rise to a presumption of arbitrability, which Plaintiffs do not dispute.

(b) The Claims Are Covered By The Agreements' Arbitration Clauses

Each of Plaintiffs' claims relates to Petrotrin's alleged conduct and obligations to WGTL and/or the Project Company in connection with the Project, which are precisely the matters covered by the Agreements. In claim 1 (fraud) and claim 2 (negligent misrepresentation) WGTL alleges that Petrotrin interfered with WGTL's ability to obtain alternate Project financing. *See* Complaint ¶¶ 67-75. These allegations directly relate to the parties' agreements with respect to the funding of the Project, which the Project Agreement addresses. *See* Kimmelman Declaration Exhibit A (Project Agreement) §§ 6-8, 31.

Since WGTL Inc. is not party to the Shareholders Agreement, any duty of good faith and fair dealing must arise from the Project Agreement. Therefore, claim 3 (breach of contract and covenant of good faith and fair dealing) (Complaint ¶ 84) arises out of or relates to the Project Agreement.

Claim 4 (unjust enrichment) and claim 6 (expropriation) allege that Petrotrin incurred liability to WGTL by purchasing, rather than paying off, the CS loan. *See id.* ¶¶ 56, 88-89, 91, 104. These allegations arise from or relate to the parties' agreement with respect to the financing of the Project, which is set out in the Project Agreement. *See* Kimmelman Declaration Exhibit A (Project Agreement) §§ 7-8. Claim 6 also relates to the parties' agreement with respect to the operation of the Project, which is also set forth in the Project Agreement. *See id.* § 1.

5

Claim 5 (negligence) alleges that Petrotrin made certain representations regarding the Project site. *See* Complaint ¶¶ 19-20. The selection of the Project site is addressed in the Project Agreement. *See* Kimmelman Declaration Exhibit A (Project Agreement) § 2. This claim also arises from or relates to the circumstances surrounding the formation of the Project Agreement, as WGTL Inc. concedes in the Press Release. *See* Kimmelman Declaration Exhibit J (Press Release).

The claims asserted by WGTL St. Lucia arise from or relate to the Shareholders Agreement. Claim 3 expressly alleges a breach of the Shareholders Agreement, which Plaintiffs concede. *See* Opposing Memorandum at 2 n.1.

To the extent that the claims relate to the formation and management of the Project Company, they also arise from or relate to the Shareholders Agreement. For example, claims 1-5 allege that Petrotrin's conduct somehow misappropriated or destroyed WGTL's investment in the Project Company and the Project itself. *See* Complaint ¶¶ 74-75 (claim 1); ¶ 79 (claim 2); ¶¶ 84-86 (claim 3); ¶ 89-92 (claim 4); and ¶ 101 (claim 5). That investment in the Project Company is set out in the Shareholders Agreement and therefore the claims arise from or relate to that Agreement. *See* Kimmelman Declaration Exhibit C (Shareholders Agreement) ¶ 3(d).

In short, all of Plaintiffs' claims arise from or relate to the Agreements and certainly "touch matters" in those Agreements. *Louis Dreyfus Negoce S.A.*, 252 F.3d at 225. Consequently, the nature of the claims and the presumption of arbitrability require that these matters be referred to arbitration. Moreover, Plaintiffs have failed to demonstrate "with positive assurance" that the arbitration clauses are not susceptible of an interpretation that they cover Plaintiffs' claims. *WorldCrisa Corp.*, 129 F.3d at 74.

    (c)  <u>Tort Claims Are Arbitrable</u>

Plaintiffs state that "the claims set forth in the Complaint assert, *inter alia*, fraud, negligence, and negligent misrepresentation—none of which are covered by the arbitration clauses advanced by

6

Defendant. As these claims were not included in, nor foreseeable for, the arbitration clauses provided by Defendant, they cannot be included in arbitration." Opposing Memorandum at 2.

This is not correct. Tort claims are no less arbitrable than claims for breach of contract under a broad arbitration clause. *See Collins*, 58 F.3d at 23 ("The mere fact that this is a tort claim, rather than one for breach of the Contracts, does not make the claim any less arbitrable.") (citation omitted). By agreeing to broad arbitration clauses, Plaintiffs agreed to arbitrate tort as well as contractual claims.

### B. It Is Undisputed That The Agreements Provide That The Arbitral Tribunal, Not The Court, Should Determine Arbitrability

The Court, however, need not reach the issue of the scope of the arbitration clauses, and whether Plaintiffs' claims are arbitrable, because the parties have agreed that the threshold issue of arbitrability should be decided by an arbitral tribunal. The issue of arbitrability may be referred to an arbitrator "if there is *clear and unmistakable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (emphasis in original, citation omitted). Where the parties "explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability," this "serves as clear and unmistakable evidence of the parties' intent to delegate such issue to an arbitrator." *Id.*

The parties incorporated such rules by agreeing to arbitration under the LCIA Rules, which grant an arbitral tribunal the power to rule on its own jurisdiction. Moving Memorandum at 11-12. The parties therefore have agreed that the question of whether Plaintiffs' claims fall within the scope of the dispute resolution clauses contained in the Agreements should be resolved by the arbitral tribunal, not the Court. Plaintiffs do not dispute this.

## C. The Details Of The Pending ICC Arbitration Are Irrelevant To This Dispute

### 1. Plaintiffs' Alleged Inability To Assert Counterclaims Or Affirmative Defenses In The ICC Arbitration Does Not Affect Its Ability To Arbitrate This Dispute

Plaintiffs allege that "[i]f Defendant is allowed to force these claims into arbitration, Plaintiffs would be barred from making its [sic] claims—effectively stopping Plaintiffs from vindicating their rights in the arbitral forum." Opposing Memorandum at 13. This argument is baseless. Plaintiffs' claims arise under the Agreements and are covered by LCIA arbitration clauses in the Agreements. Petrotrin has moved to compel arbitration under these LCIA arbitration clauses. Plaintiffs' claims are independent of the claims that Petrotrin has asserted under the GCA in the ICC arbitration. Thus, Plaintiffs' decision not to assert counterclaims in the ICC arbitration is irrelevant to its obligation to arbitrate under the Project Agreement and, in the case of WGTL St. Lucia, the Shareholders Agreement.

### 2. Plaintiffs May Not Avoid Their Obligation To Arbitrate Under The Agreements By Alleging That Arbitration Is "Prohibitively Expensive"

Plaintiffs also attempt to challenge the Agreements' arbitration clauses by arguing that the cost of the ICC proceedings are "shocking to the conscience" and "would preclude Plaintiffs from effectively vindicating its [sic] rights[.]" *Id.* at 2, 14. This argument fails because the cost of the pending ICC arbitration is irrelevant to the claims in this case. Petrotrin does not seek to compel Plaintiffs to assert their claims in that proceeding, which is based on the GCA. Rather, Petrotrin has moved to compel arbitration under the LCIA Rules based on the arbitration clauses in the Agreements.

Nor could Plaintiffs make a "cost" argument based on the arbitration clauses in the Agreements. Plaintiffs are commercially sophisticated parties who willingly entered into the Agreements, which plainly call for arbitration under the LCIA Rules.[5] The Schedule of Arbitration Costs, which is incorporated by reference into the LCIA Rules, provides that the LCIA Court "may direct the parties, in

---

[5] The LCIA Rules are publically available. *See* http://www.lcia.org/Dispute_Resolution_Services/ LCIA_Arbitration_Rules.aspx (last visited July 23, 2010).

such proportions at it thinks appropriate, to make…payments on account of the costs of the arbitration." Kimmelman Supp. Declaration Exhibit A (Schedule of Arbitration Costs) Article 5(a).

To the extent Plaintiffs wish to challenge the validity of the agreement to arbitrate, the proper forum for Plaintiffs to assert any such objection is before the arbitral tribunal. This is because the parties agreed by adopting the LCIA Rules that all issues relating to the enforceability of the arbitration clauses are to be resolved by the arbitral tribunal. *See* Kimmelman Declaration Exhibit B (LCIA Rules) Article 23.1. This conclusion is supported by the Supreme Court's recent decision in *Rent-A-Center, West, Inc. v. Jackson*, in which the Court concluded that an unconscionability challenge to an arbitration clause must be resolved by an arbitral tribunal, not the Court. No. 09-497, 2010 U.S. Lexis 4981 at *16 (U.S. June 21, 2010).

Plaintiffs' reliance on *Green Tree Fin. Corp.* is misplaced. In that decision the Supreme Court noted that arbitration costs could theoretically preclude a party "from effectively vindicating [its] federal statutory rights in the arbitral forum." *Green Tree Fin. Corp.-Ala. V. Randolph*, 531 U.S. 79, 90 (2000). However, Plaintiffs are corporate entities, unlike the individual plaintiff in *Green Tree Fin. Corp.*, and do not seek to vindicate any federal statutory rights. Additionally, beyond the statement that they cannot afford to pay the cost of the ICC arbitration (Opposing Memorandum at 14), which is irrelevant to Plaintiffs' ability to commence an LCIA arbitration, Plaintiffs have failed to show that they would be "saddled with prohibitive costs" if compelled to arbitrate under the LCIA clauses in the Agreements that they agreed to. *Green Tree,* 531 U.S. at 91-92.

## II. THE COURT SHOULD STAY THIS ACTION PENDING ARBITRATION

If the Court finds that Plaintiffs' claims are referable to arbitration, it must compel arbitration. *See* 9 U.S.C. § 206. The Court does have the discretion, under certain circumstances, to stay the action or dismiss it entirely. *See Duraku v. Tishman Speyer Props., Inc.*, No. 09 Civ. 9351, 2010 U.S. Dist. LEXIS 53261 at *11 (S.D.N.Y. May 27, 2010) (A court has the "discretion to dismiss, rather than stay,

an action when all of the issues in it must be arbitrated.") (citation omitted). Petrotrin requests that the Court stay this action.

## CONCLUSION

Plaintiffs breached their contractual obligations to arbitrate their claims and should be compelled to honor those obligations pursuant to 9 U.S.C. § 206 and Article II of the New York Convention. The Court also should stay the litigation pending arbitration pursuant to 9 U.S.C. § 3.[6]

Dated: New York, New York
      July 23, 2010

Respectfully submitted,

ALLEN & OVERY LLP

By: /s/ Louis B. Kimmelman
     Louis B. Kimmelman

1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
E-Mail: benno.kimmelman@allenovery.com
*Attorneys for Defendant*
Petroleum Company of Trinidad and Tobago Limited

---

[6] Plaintiffs assert that "by submitting this motion, Defendant has…waived any and all jurisdictional defenses." Opposing Memorandum at 10 n.4. This is incorrect. Rule 12(b) of the Federal Rules of Civil Procedure provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading." Fed. R. Civ. P. 12(b). Further, in *Canadian Overseas Ores Ltd.* the Second Circuit found no waiver of sovereign immunity where a party reserved the defense and had not yet filed a response pleading. *Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*, 727 F.2d 274, 278 (2d Cir. 1984). In addition to reserving the defense of sovereign immunity, Petrotrin has not filed a responsive pleading and therefore has not waived any defenses. Plaintiffs argue that Petrotrin waived sovereign immunity in the Credit Agreement, but Plaintiffs cite a clause applicable to the Project Company as borrower, not to Petrotrin. Opposing Memorandum at 10 n.4.