```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - x
World GTL Inc. and                     :
World GTL St. Lucia Ltd.,
                                       :
              Plaintiffs,     :    10 Civ. 1542 (LMM)
                                   MEMORANDUM AND ORDER
          - v -                        :

Petroleum Company of Trinidad and      :
Tobago Ltd.,
                                       :
              Defendant.      :
- - - - - - - - - - - - - - - - - - - x
```

McKENNA, D.J.

World GTL Inc. ("WGTL") and World GTL St. Lucia Ltd. ("WGTL St. Lucia") (collectively, "Plaintiffs") commenced this action against Petroleum Company of Trinidad and Tobago Limited ("Petrotrin" or "Defendant") for certain breach of contract and tort claims. Plaintiffs' claims stem from Defendant's alleged wrongful taking and expropriation of a gas-to-liquid plant that the parties were constructing in the Republic of Trinidad and Tobago ("Trinidad"). (Compl. ¶ 1.)

Defendant moves to compel arbitration of all claims asserted by Plaintiffs. Defendant's motion is pursuant to Section 206 of the Federal Arbitration Act, 9 U.S.C. § 206 (2010), and Article II of the Convention on the Recognition and

Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2157, 330 U.N.T.S. 38. Defendant also requests that the Court stay trial of this action, pursuant to Section 3 of the Federal Arbitration Act. 9 U.S.C. § 3.

For the reasons set forth below, Defendant's motion to compel arbitration of all claims asserted by Plaintiffs and to stay this action is GRANTED.

## I.   BACKGROUND

**A.   The Parties**

    **1. The Litigating Parties**

        **a. Plaintiffs**

Plaintiff WGTL is a New York corporation with its principal place of business in New York, New York. (Compl. ¶ 7.) WGTL is in the business of developing, constructing and operating small to medium size gas-to-liquid plants. (Id.) Plaintiff WGTL St. Lucia is a corporation established under the laws of St. Lucia with its principal place of business in St. Lucia. (Id. ¶ 8.) WGTL has over a 95% interest in WGTL St. Lucia. (Id.)

        **b. Defendant**

Defendant Petrotrin is a limited liability company organized under the laws of Trinidad. (Fed. R. Civ. P. 7.1 Corp. Disclosure Statement.) Petrotrin's principal place of business is in Pointe-a-Pierre, Trinidad, and it is wholly owned by the Government of Trinidad, operating under the direction of the

Ministries of Finance and Energy. (Compl. ¶ 9.)

2. **Other Parties to the Transactions that are not Parties to the Litigation**

World GTL Trinidad Ltd. (the "Project Company") was jointly established by WGTL, through WGTL St. Lucia, and Petrotrin. (Id. ¶ 10.) The Project Company's principal place of business is in Pointe-a-Pierre, Trinidad. (Id.) Plaintiffs contend that, at all relevant times, WGTL St. Lucia had a 51% ownership interest and Petrotrin had a 49% ownership interest in the Project Company. (Id.)

Credit Suisse, through its Cayman Islands Branch ("Credit Suisse"), acted as administrative agent and collateral agent for lenders who provided a construction loan to the Project Company. (Id. ¶ 11.) This transaction is set forth in the amended and restated credit agreement (the "Credit Agreement"), dated May 4, 2007. (See Kimmelman Decl., Ex. D at 1.)

**B. Factual Background**[1]

On September 22, 2005, Plaintiffs, the Project Company, and Defendant entered into an agreement (the "Project Agreement") to construct a gas-to-liquid plant on the grounds of Defendant's refinery in Pointe-a-Pierre, Trinidad. (Compl. ¶¶ 18-19.) The Project Agreement detailed the basic terms and conditions with

---

[1] Certain allegations in the Complaint are summarized here solely to give context to Defendant's motion to compel arbitration.

regard to selecting the project site, creating the project schedule, supplying gas to the site, determining costs, and financing the project. (Def.'s Mem. 3 (citing Kimmelman Decl., Ex. A, respectively, §§ 2, 3, 11, 6-8).)

The Project Agreement contained a dispute resolution clause providing for arbitration of "[a]ny dispute, controversy or claims arising out of or related to this Agreement, or breach, termination or invalidity of said Agreement." (Kimmelman Decl., Ex. A § 26.) This clause also stipulated that arbitration would occur under the rules of the London Court of International Arbitration. (Id.)

On January 19, 2006, WGTL St. Lucia, the Project Company, and Petrotrin entered into a shareholders agreement (the "Shareholders Agreement"). (Compl. ¶ 81.) The Shareholders Agreement set forth the respective ownership interests of Petrotrin and WGTL St. Lucia in the Project Company (Kimmelman Decl., Ex. C § 3(c)), and provided for creation of the Project Company's board of directors (id., Ex. C § 3(b)). The Shareholders Agreement contained the same arbitration clause as the Project Agreement. (See Kimmelman Decl., Ex. C § 9(a) and id., Ex. A § 26.)

The Project Company, various financial institutions acting as lenders, and Credit Suisse entered into the Credit Agreement on May 4, 2007. (Kimmelman Decl., Ex. D at 1.) Under the Credit

4

Agreement, the Project Company received a $125 million construction loan. (See Compl. ¶ 22.) Unlike the Project Agreement and the Shareholders Agreement, the Credit Agreement did not contain an arbitration clause. (Pls.' Mem. 10.) Rather, the Credit Agreement provided for litigation in either the state or federal courts of New York. (Kimmelman Decl., Ex. D § 9.20(b).)

The Credit Agreement provided that the gas-to-liquid facility had to meet certain production requirements prior to July 12, 2009, or there would be a "Fundamental Event of Default" as defined in the Credit Agreement. (Compl. ¶ 24-25.) Due to alleged sulfur emissions and contamination from Defendant's refinery, the project fell behind schedule and progress was not going to meet the requirements set forth in the Credit Agreement. (See id. ¶¶ 26-30.) Knowing this, Plaintiffs claim they pursued other financing. (See id. ¶¶ 31, 33.) Instead, however, Credit Suisse assigned the loan to Defendant. (Id. ¶ 48.)

## II. DISCUSSION

Plaintiffs allege that Defendant's acquisition of the loan was part of a plan to "take over the [Project Company] facility." (Compl. ¶ 49.) Furthermore, Plaintiffs assert that Defendant had a "secret plan to expropriate the plant." (Id. ¶ 2.) In deciding this motion, however, the Court's

5

determination of the arbitrability of the claims asserted by Plaintiffs does not in any way rest upon the merits of Plaintiffs' claims. JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 171 (2d Cir. 2004). The arbitration clause found in the Project Agreement and Shareholder Agreement directs that "[a]ny dispute, controversy, or claims arising out of or related to this Agreement" be referred to arbitration. (Kimmelman Decl., Ex. A § 26; id., Ex. C § 9(a).) The Court, therefore, "'ha[s] no business weighing the merits of [Plaintiffs'] grievance[s] . . . The agreement is to submit [[a]ny dispute, controversy, or claim arising out of or related to this Agreement] to arbitration, not merely those which the court will deem meritorious.'" JLM Indus., 387 F.3d 171-72 (2d Cir. 2004) (quoting AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986)) (emphasis, additional citation and parenthetical omitted).

**A. Standard for Determining Arbitrability**

When determining whether a dispute should be arbitrated, a court considers: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001) (citation omitted). The Second Circuit has said that "it is difficult to overstate the strong federal

6

policy in favor of arbitration, and it is a policy we have often and emphatically applied." Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 121 (2d Cir. 2010) (citation omitted). Therefore, if "the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability." Hartford Accident, 246 F.3d at 226 (citation omitted).

As for the applicability of an arbitration clause, a court must first determine "whether the arbitration agreement is broad or narrow. If broad, then there is a presumption that the claims are arbitrable." Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995) (internal quotation marks and citation omitted). Federal policy requires courts to construe arbitration clauses as broadly as possible. See id. at 19.

## B.  The Arbitrability of Plaintiffs' Claims

### 1. The Issue of Arbitrability

Defendant argues that "[t]he Court should refer this dispute, including the issue of arbitrability, to the arbitral tribunal as required by the agreements." (Def.'s Reply Mem. 2.) Defendant points to the Project Agreement (Kimmelman Decl., Ex. A § 26) and the Shareholders Agreement (id., Ex. C § 9(a)), where both Plaintiffs and Defendants agreed to use the London Court of International Arbitration ("LCIA") rules. Under LCIA

rules, "'[t]he Arbitral Tribunal shall have the power to rule on its own jurisdiction, including any objection to . . . the Arbitration Agreement.'" (Def.'s Reply Mem. 1 (quoting Kimmelman Decl., Ex. B, Art. 23.1).) Plaintiffs, however, dispute that their claims fall under the Project Agreement or the Shareholders Agreement,[2] which are governed by the foregoing. (Pls.' Mem. 8.) It is, therefore, proper for this Court to determine which agreement governs Plaintiffs' claims and then, accordingly, rule on the motion to compel arbitration.

**2. The Arbitration Clause is Broad**

The arbitration clause found within the Project Agreement and the Shareholders Agreement is broad, as the Second Circuit determined for a nearly identical arbitration clause. See Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995) (stating, "The clause in this case, submitting to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause." (citation omitted)). Accordingly, there is a presumption that claims brought under the Project Agreement or the Shareholders Agreement are arbitrable.

---

[2] Plaintiffs concede that their third claim, breach of contract and breach of the covenant of good faith and fair dealing, is related to the Shareholders Agreement. (Pls.' Mem. 2 n.1.)

**3. Plaintiffs' Claims Fall within the Scope of the Project Agreement**

Plaintiffs contend that they brought their claims under the Credit Agreement, and are, therefore, not subject to the arbitration clause found within the Project Agreement and the Shareholders Agreement. (Pls.' Mem. 8.) However, neither of the Plaintiffs was a party to the Credit Agreement, which was between Credit Suisse and the Project Company. (See Kimmelman Decl., Ex. D at 1.) Plaintiffs, therefore, cannot claim that the clause which compels litigation, rather than arbitration, applies to them.

Although Plaintiffs contend that all their claims "arise out of the malfeasance and misdoings of Defendant with regard to the Credit Agreement or are based on fraud or negligence" (Pls.' Mem. 8), the main agreement that covers disputes between Plaintiffs and Defendant is the Project Agreement. The Court therefore finds that the claims are arbitrable.

Furthermore, the fact that Plaintiffs assert certain claims in tort does not preclude arbitration of these issues. See Collins & Aikman Prods., 58 F.3d at 22-23 (stating that a tort claim not wholly independent of the contract was no less arbitrable than a breach of contract claim). Plaintiffs' tort claims still pertain to issues under the purview of the Project Agreement and are, therefore, arbitrable.

## C. Staying Trial of the Action

Under Section 3 of the Federal Arbitration Act, if a court finds that claims are referable to arbitration, on application of one of the parties, a court may stay trial of the action. 9 U.S.C. § 3. Plaintiffs argue that the cost of arbitration and their alleged inability to assert claims in the arbitral forum dictate denying the motion to compel arbitration, or in the alternative, the Court refusing to stay this action. (Pls.' Mem. 12-14.) The Court, however, is not convinced. The broad language of the arbitration clause and the strong federal policy compelling arbitration persuade this Court to grant Defendant's request to stay this action.

## CONCLUSION

For the reasons stated above, Defendant's motion to compel arbitration for all of Plaintiffs' claims and stay this action is granted.

SO ORDERED.

Dated: August //, 2010

Lawrence M. McKenna
U.S.D.J.